___

SO ORDERED,

Judge Katharine Samson
United States Bankruptcy Judge
Date Signed: January 16, 2014

The Order of the Court is set forth below. The docket reflects the date entered.
___

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: LEE A. WHORTON | CASE NO. 12-51607-KMS |
| DEBTOR | CHAPTER 7 |
| GULF COAST COMMUNITY FEDERAL CREDIT UNION | PLAINTIFF |
| V. | ADV. NO. 12-05044-KMS |
| LEE A. WHORTON | DEFENDANT |

### MEMORANDUM OPINION

This matter came before the Court for trial on October 1, 2013, (the "Trial), on the Complaint Objecting to Dischargeability of a Debt, (Adv. Dkt. No. 1), filed by creditor-plaintiff Gulf Coast Community Federal Credit Union ("Gulf Coast") and the Answer to Complaint, (Adv. Dkt. No. 6), filed by debtor-defendant Lee A. Whorton ("Whorton"). At trial, Robert A. Wolford represented Whorton and Matthew G. Mestayer represented Gulf Coast. The exhibits introduced by the parties and testimony were the only evidence presented at Trial. The Court, having considered the evidence, finds that the obligation is dischargeable for the reasons set forth below.[1]

---

[1] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

## I. JURISDICTION

The Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (I), & (O).[2]

## II. FINDINGS OF FACT

Whorton was the 99% owner of Prestige Auto Group, Inc. ("Prestige"), a now defunct used car dealership. With regard to the transaction at issue, Whorton testified that Heather and Brian Fain approached him and asked him to help them complete the loan paperwork on a 2004 Volkswagen Touareg they planned to keep as Heather Fain's personal vehicle. Whorton explained that wholesalers cannot obtain loans through a bank, so they needed his help to complete financing for the vehicle through Gulf Coast. At Trial, Whorton testified that he had known Heather and Brian Fain for a number of years and that he had a close working relationship with Brian Fain, who was a wholesaler. In fact, Whorton testified that Brian Fain was experienced in drafting title applications and had "worked up" over a hundred deals involving outside loans for him at Prestige. Whorton agreed to complete the transaction as a favor to the Fains and Brian Fain typed up the title application himself.[3]

Gulf Coast extended Heather Fain a loan in the amount of $23,840.42 to finance the purchase of the 2004 Volkswagen Toureg in October 2007. (Adv. Dkt. No. 26, at 2). The resulting check was issued to both Heather Fain and Prestige and was tendered in trust to

---

[2] The matter addressed in this order concerns issues relating to discharge pursuant to 11 U.S.C. § 523 and is a proceeding under 28 U.S.C. § 157(b)(2)(I). The debtor has received a discharge. (Dkt. No. 12). Only claims subject to non-dischargeability findings are relevant at this stage in the bankruptcy proceeding.

[3] Whorton testified that he allowed Brian Fain to type the information himself because he had extensive experience in filling out the documentation; he trusted him; and he was not making a profit on the deal.

Prestige.[4] Whorton testified that once he received the check from Gulf Coast, he gave it to Heather Fain without first receiving the original title to the vehicle.[5] She was supposed to return with the title, but failed to do so. A couple of days later, Whorton inquired as to the whereabouts of the title and Brian Fain told him it had not come in yet, which Whorton claimed was normal. But as time passed without receipt of the title, Whorton grew more concerned and testified that he realized he would not receive it once he noticed Heather Fain was no longer driving the vehicle. Ladonna Ladner ("Ladner"), the Assistant Vice President of Operations at Gulf Coast, testified that the vehicle was ultimately imported into Belgium and is unrecoverable. Gulf Coast never received proper title to the vehicle and has not received payment on the loan. (*Id.*).

On September 21, 2011, Gulf Coast obtained a judgment in the County Court of Harrison County, Mississippi, against Heather Fain, Prestige, and Whorton in the amount of $31,840.76.[6] On July 31, 2012, Whorton filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[7] He received a discharge on November 28, 2012. (Dkt. No. 12). In his schedules, Whorton listed Gulf Coast as a creditor holding a general unsecured claim in the amount of $31,840.76. (Dkt. No. 3, at 14). On October 8, 2012, Gulf Coast timely filed this adversary proceeding objecting to the dischargeability of the debt Whorton owes it. (Adv. Dkt. No. 1). The Complaint alleged that the debt is non-dischargeable pursuant to § 523(a)(2).

---

[4] (Adv. Dkt. No. 26, at 2). The cashier's check attached to the Complaint and entered into evidence as Exhibit B-10 is blank, but the parties agree it was issued in the amount of $23,840.20 to both Heather Fain and Prestige (*Id.*).

[5] Whorton admitted that he would not normally release the loan proceeds to a customer without first obtaining the title, but claimed he did so in this instance because of his close relationship with the Fains. Whorton also testified that he paid the state taxes on the vehicle as required under Mississippi law before turning the remaining loan funds over to Heather Fain.

[6] (Adv. Dkt. No. 1, at 14). The judgment consists of an award for the amount of the loan ($23,840.42) plus attorney's fees ($7,900.34) and carries an interest rate of 8% per annum until paid in full. *Id.*

[7] (Dkt. No. 1). "Bankruptcy Code" or "Code" refers to the United States Bankruptcy Code located at Title 11 of the United States Code. All Code sections hereinafter will refer to the Bankruptcy Code unless specifically noted otherwise.

### III.     CONCLUSIONS OF LAW

**A.     Burden of Proof**

A debtor is generally granted a discharge of all prepetition debts in a Chapter 7 bankruptcy case, with the exception of certain debts described in § 523(a). *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 674 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 845 (2013). The Fifth Circuit has stated that "[e]xceptions to discharge should be construed in favor of debtors in accordance with the principle that provisions dealing with this subject are remedial in nature and are designed to give a fresh start to debtors unhampered by pre-existing financial burdens." *In re Davis*, 194 F.3d at 573. In a proceeding under § 523, the party seeking a determination of non-dischargeability bears the burden of proof by a preponderance of the evidence.[8] Requiring the party objecting to the dischargeability of a debt to "carry the burden of proof comports with the policy behind federal bankruptcy law which favors discharge in an effort to provide the debtor with a fresh start." *Rustin v. Rustin (In re Rustin)*, No. 04-50890-NPO, 2011 WL 5443067, at *7 (Bankr. S.D. Miss. Nov. 9, 2011) (*citing* 4 Collier on Bankruptcy ¶ 523.05 (16th ed. 2010)). Gulf Coast seeks to have the debt owed to it declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(B). Therefore, Gulf Coast bears the burden of proving each of the required elements of § 523(a)(2)(A), § 523(a)(2)(B), or both by a preponderance of the evidence.

**B.     11 U.S.C. § 523(a)(2)(A)**

Section 523(a)(2)(A) excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's

---

[8] *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991); Fed. R. Bankr. P. 4005. "A fact is proven by a preponderance of the evidence if the Court finds it more likely than not the fact is true." *Lanier v. Futch (In re Futch)*, No. 09-00144-NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011) (*citing EPA v. Sequa Corp. (In re Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 909–10 (5th Cir. 1993)).

financial condition." 11 U.S.C. § 523(a)(2)(A). "Section 523(a)(2)(A) encompasses three similar grounds for non-dischargeability, all of which apply to 'debts obtained by frauds involving moral turpitude or intentional wrong.'" *In re Futch*, 2011 WL 576071, at *17 (*citing First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 813 (5th Cir. 1992)).

The Fifth Circuit has recognized a distinction between the elements of proof required for false pretenses or false representation and those required for actual fraud. *AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001). This distinction "appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact." *ETRG Investors, LLC v. Hardee (In re Hardee)*, No. 11-60242, 2013 WL 1084494, at *12 (Bankr. E.D. Tex. Mar. 14, 2013) (*citing Bank of Louisiana v. Bercier (In re Bercier),* 934 F.2d 689, 692 (5th Cir.1991) ("[A debtor's] promise . . . related to [a] future action [that does] not purport to depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense")).

1. **False Pretense or False Representation**

Under § 523(a)(2)(A), a representation made by a debtor is a false pretense or false representation if it was: (1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the other party. *In re Mercer,* 246 F.3d 391, 403 (5th Cir. 2001); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292–93 (5th Cir. 1995). The parties stipulated that, by signing the Application for Certificate or Title ("Title Application") and submitting it to Gulf Coast, Whorton represented that he would provide Gulf Coast with a valid, perfected lien on the 2004 Volkswagen Touareg after receipt of the financing the Fains needed to purchase the vehicle.[9] This representation relates to a future action—obtaining and submitting

---

[9] (Adv. Dkt. No. 26 at 2). Ladner testified that normally Gulf Coast sends the loan money to the dealer; the dealer obtains the title to the vehicle from the buyer and sends it in to the State; and the State sends the title reflecting the

the original title to the Secretary of State—not a past or current fact. Thus, the promise cannot be defined as a false representation or a false pretense and Gulf Coast must show actual fraud to succeed on its claim under § 523(a)(2)(A).

### 2. Actual Fraud

A party objecting to discharge of a debt under § 523(a)(2)(A) for *actual fraud* must demonstrate that: (1) the debtor made representations; (2) the debtor knew the representations were false at the time they were made; (3) the representations were made with the intention and purpose to deceive the creditor; (4) the creditor actually and justifiably relied on the representations; and (5) the creditor sustained a loss as a proximate result of its reliance. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995). At trial, Gulf Coast failed to establish the second and third elements of actual fraud: that Whorton knew the representations were false *at the time they were made* and that they were made with the intention and purpose to deceive the creditor.

First, with respect to the second element, the Court finds that Gulf Coast failed to establish that Whorton knew, at either *the time he submitted the Title Application or the time he received the loan proceeds*, that he would not be able to provide Gulf Coast with a valid and perfected lien on the vehicle. Indeed, counsel for Gulf Coast stated at Trial that his client did not believe Whorton was "in on" the scam perpetrated by the Fains. Further, Whorton's Trial testimony indicated he intended to send the title in to the Secretary of State once he received it from the Fains: he paid the state taxes on the vehicle; he knew he could lose his bond and license if he failed to send the original title in; and he continued to inquire as to the title's whereabouts. Finally, Whorton testified that he believed he would receive the title to the vehicle from the Fains up until several months after the transaction took place. Thus, at best Gulf Coast

---

then -perfected lien to Gulf Coast.

established that Whorton knew *several months after* he signed the Title Application and distributed the funds to Heather Fain that Gulf Coast would not receive a perfected lien because the Fains refused to deliver the title to him.

Second, with respect to the third element, Gulf Coast failed to establish that Whorton's representation that he would send the title in was made with the intent to deceive Gulf Coast. The testimony established that Whorton believed he would receive the title from the Fains until he noticed Heather Fain was no longer driving the vehicle. And Whorton specifically testified that he never intended to mislead or defraud Gulf Coast when he signed the Title Application. Further, Gulf Coast makes much of the "reckless" and "loose" nature with which it asserts Whorton handled this particular transaction. But showing actual fraud under § 523(a)(2)(A) requires actual intent to deceive the creditor; recklessness alone is not enough. *RecoverEdge L.P. v. Pentecost*, 44 F.3d at 1293; *In re Maurice*, 138 B.R. 890, 895 (Bankr. N.D. Ill. 1992). Finally, Gulf Coast's assertion that the loan proceeds were to be held in trust—standing alone—is not enough to satisfy the intent element of actual fraud under § 523(a)(2)(A). The parties stipulated that the loan proceeds were "tendered in trust to Prestige." (Dkt. No. 26 at 2). Even if the Court were to assume this means that Whorton, acting on behalf of Prestige, implicitly promised to retain the title before releasing the loan proceeds to the Fains:

> [A] wilful and malicious injury does not follow as of course for every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. . . . In these and like cases, what is done is a tort, but not a willful and malicious one.

*In re Higginbotham*, 117 B.R. 211, 215–16 (Bankr. E.D. Va. 1990) (*quoting Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332–33 (1934)). In this case, at best a technical conversion occurred: no evidence was adduced at trial indicating Whorton had any knowledge of the Fains'

intent either when he signed the Title Application or when he distributed the funds to Heather Fain. Just as this technical conversion does not automatically result in willful and malicious injury, nor does it automatically equate to actual intent to injure the creditor.

Accordingly, Gulf Coast has failed to establish the elements of actual fraud under § 523(a)(2)(A) and must rely on § 523(a)(2)(B) to succeed on its claim.

C. **11 U.S.C. § 523(a)(2)(B)**

Under § 523(a)(2)(B),[10] debts obtained by "a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied are excepted from discharge." *In re Bandi*, 683 F.3d at 674–75. This exception to discharge only applies to statements respecting either the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(B); *In re Bandi*, 683 F.3d at 674. The Fifth Circuit has instructed that the term "financial condition," as used in § 523(a)(2), must be narrowly interpreted. *See In re Bandi*, 683 F.3d at 676 (false representation that debtors owned property was not statement respecting their "financial condition" thus § 523(a)(2)(A), not (a)(2)(B), applicable). The Court of Appeals explained that "the term was meant to embody terms commonly understood in commercial usage"—"the general overall financial condition of an entity or individual, that is, the overall value of property and income as compared to debt and liabilities." *Id.*

---

[10] Section 523(a)(2)(B) provides that a discharge under § 727 does not discharge an individual debtor from any debt:

 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
    (B) use of a statement in writing--
        (i) that is materially false;
        (ii) respecting the debtor's or an insider's financial condition;
        (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
        (iv) that the debtor caused to be made or published with intent to deceive

11 U.S.C. § 523(a)(2)(B).

At Trial, Gulf Coast failed to direct the Court to any statement in writing regarding either Whorton or Prestige's financial condition.[11] In its post-trial letter brief, Gulf Coast argues that "the statements contained in the credit application were materially false . . ." and " directly relate to Whorton's financial condition." (Adv. Dkt. No. 30 at 4–5). Specifically, Gulf Coast argues that it was not notified that "this transaction was fundamentally different than others," or that the check would be given to Fain rather than held in trust until Whorton obtained the original title to the vehicle. (*Id.*). But the credit application itself relates to the financial condition of Heather Fain—not Whorton or Prestige. Whorton signed the Title Application and the Buyers Order/ Bill of Sale. (Exh. B, at 2, 3). Neither document contains any statements regarding either Whorton's overall financial condition or the overall value of Whorton's property and income compared to his debts and liabilities; nor does either document contain any such information related to Prestige.

Accordingly, Gulf Coast has failed to carry its burden with respect to its claim under § 523(a)(2)(B) and the debt owed to it by Whorton is dischargeable.

## IV.    CONCLUSION

For the reasons stated above, the debt Whorton owes Gulf Coast is dischargeable. A separate judgment consistent with this opinion will be entered in accordance with Rule 7058 of the Federal Rules of Bankruptcy Procedure.

## END OF OPINION ##

---

[11] If the debtor is an individual, a corporation of which he is a director, officer, or person in control is included in the definition of an "insider" under the Code. *See* 11 U.S.C. § 101(31).